UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| GLENDER PRESLEY | * | CIVIL ACTION NO.  15-2261 |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Glender Presley protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on February 4, 2013.  (Tr. 180-189, 204, 40).  She alleged disability as of October 13, 2011,[1] because of hypertensive cardiovascular disease/hypertension, severe back pain, lumbar spine impairment, bulging disc injury, multiple joint arthritis, congestive heart failure, hypertension, and enlarged heart.  (Tr. 204, 216). The state agency denied the claims at the initial stage of the administrative process.

---

[1] Presley filed prior applications in April 2009 and July 2010.  (Tr. 82).  The claims were denied by an Administrative Law Judge on April 12 and October 12, 2011.  *Id*.  Thus, the instant Title II application addresses the period beginning on October 13, 2011, – one day after the Commissioner's final decision on her prior claim.

(Tr. 80-101, 104-112).  Thereafter, Presley requested and received a January 7, 2014, hearing before an Administrative Law Judge ("ALJ").  (Tr. 52-79).  However, in a March 10, 2014, written decision, the ALJ determined that Presley was not disabled under the Social Security Act, finding at step four of the sequential evaluation process that she was able to return to her past relevant work as a carhop, short order cook, and fabric layout worker.  (Tr. 37-47).  Presley appealed the adverse decision to the Appeals Council.  On June 23, 2015, however, the Appeals Council denied Presley's request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-4).

On August 22, 2015, Presley sought review before this court.  She contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ failed to properly weigh the medical evidence and did not properly evaluate her credibility.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

> (3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## ALJ's Findings

### I.   Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 42). At step two, she found that the claimant suffers severe impairments of coronary artery disease with episodes of congestive heart failure, hypertension, peripheral neuropathy, and degenerative disc disease of the lumbar spine. (Tr. 42-44).[2] She concluded, however, that the impairments were not severe

---

[2] She further found that the claimant's medically determinable impairments of arthritis, degenerative disc disease of the cervical spine, and obesity were not severe. *Id*.

enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 44).

## II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[3] except that she can never climb ladders, ropes, or scaffolds; only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; avoid unprotected heights and dangerous moving machinery; frequently handle, finger and feel bilaterally; with no more than occasional exposure to concentrated fumes, gases; and no exposure to temperature extremes or humidity. (Tr. 44-47).

## III. Step Four

At step four, with the assistance of a vocational expert, the ALJ, determined that the claimant was able to return to her past relevant work as a carhop – light, Dictionary of Occupational Titles ("DOT") Code # 311.477-010; short order cook – light, DOT Code # 313.374-014; and fabric layout worker – light, DOT Code # 589.687-022, both as she actually performed these jobs, and as they are performed generally in the national economy. (Tr. 47,

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

77).[4]

## Analysis

**I.     Residual Functional Capacity**

    a)      Relevant Medical Evidence

The instant medical record is comprised largely of plaintiff's treatment visits with her primary care provider, Donald Haynes, M.D., at the Claiborne Family Medical Clinic ("CFMC"), and her cardiologist, Phillip Rozeman, M.D.

Progress notes from the CFMC document regular visits spanning the period from at least May 2011 through February 2014 and beyond. *See* Tr. 340-383, 390-401, 432-434, 470-494, and 21-29. A typical visit included complaints of back, neck, and shoulder pain, with tingling in the fingers. *See* Tr. 470. Examinations often confirmed arthritic changes, and, at times, a disturbed gait. *See e.g.,* Tr. 471.

Plaintiff treated with Dr. Rozeman from at least February 2009 through April 2013. (Tr. 248-258, 292-339, 428-430). In February 2009, Dr. Rozeman diagnosed her with congestive heart failure; severe cardiomyopathy with ejection fraction of less than 20 percent; plus renal insufficiency. (Tr. 327-329). On March 4, 2010, Dr. Kasabali implanted a defibrillator. (Tr. 312-313). On March 4, 2013, Dr. Rozeman noted that Presley had left shoulder/arm pain; cardiomyopathy, non-ischemic, with ejection fraction of 30%; hypertension; and history of: borderline diabetes, bulging disc in the lower spine, and renal insufficiency. (Tr. 296-297)

---

    [4] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61).

Presley's medical records further reflect that on March 3, 2013, she went to the emergency room with complaints of left arm pain and paresthesia of the left hand, with occasional weakness of the left hand. (Tr. 271-272). After monitoring, the emergency room physician concluded that her symptoms appeared more consistent with a possible pinched nerve extending from the cervical spine to the shoulder. *Id.*[5]

At the request of plaintiff's attorney, Presley's treating physician, Dr. Haynes, completed two "Arthritis Impairment" questionnaires, dated June 8, 2011, and October 9, 2013. (Tr. 436-443, 452-459).[6] Haynes endorsed limitations of functioning that were more restrictive than the ALJ's RFC. For instance, Presley could stand and/or walk no more than two to three hours in an eight hour work day.

Also at the request of plaintiff's attorney, a nurse practitioner with Dr. Rozeman completed a "Cardiac Impairment" questionnaire on an unspecified date, but likely in 2010. (Tr. 460-466). Dr. Rozeman's office endorsed greater limitations of functioning than those adopted by the ALJ in her the RFC. For instance, the nurse indicated that Presley could stand and/or walk for no more than one hour in an eight hour day.

On September 6, 2013, Dr. Rozeman wrote a letter to plaintiff's attorney explaining that Presley's clinical status remained unchanged since the last time he had completed a cardiac

---

[5] A March 4, 2013, CT scan of the cervical spine showed multilevel degenerative changes of the cervical spine most significant at C6-C7 where there was mild left-sided neuroforaminal stenosis. (Tr. 283-284). Furthermore, an April 9, 2012, CT scan of the lumbar spine showed spondylosis at L4-5 and L5-S1 levels with posterior disc bulging and facet hypertrophy causing central canal stenosis and neural foraminal narrowing at these levels. (Tr. 261).

[6] The June 8, 2011, treatment note documents that Dr. Haynes spent an additional 45 minutes with Presley to perform an extra examination and to obtain additional information for purposes of completing the disability form. (Tr. 344-346).

impairment questionnaire. (Tr. 428). He noted, however, that an April 24, 2013, echocardiogram demonstrated improved heart function with an ejection fraction greater than 60 percent. *Id*.

On May 7, 2013, non-examining agency physician, Johnny Craig, M.D., reviewed the record and completed a physical residual functional capacity assessment form. (Tr. 86-88). He indicated, *inter alia*, that Presley could stand and/or walk for a total of only two hours in an eight hour day, and sit for about six hours in an eight hour day. *Id*.

  b) <u>Discussion</u>

In her decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, the impressions of plaintiff's treating physician, Dr. Haynes, and the assessment of the non-examining agency physician, Dr. Craig. (Tr. 44-47). In deriving plaintiff's RFC, the ALJ resolved the opinion evidence as follows,

> [a]s for the opinion evidence, Dr. Haynes' opinion is afforded little weight, as his limitations are not supported by his own examinations of the claimant. Dr. Haynes examined the claimant at Claiborne Family Medical Center. The majority of these examinations show the claimant had no major abnormalities on examination. The state agency physician's assessment is afforded great weight, as the claimant has normal organ function, normal neurological functioning, as no loss of mobility. Therefore, based on the foregoing, the undersigned finds the claimant is able to perform a limited range of light work.

(Tr. 46-47).

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence, *inter alia*, because she declined to adopt the opinion of the treating physician, Dr. Haynes, and also failed to address the opinion of plaintiff's treating cardiologist, Dr. Rozeman (as reflected on the form completed by his nurse practitioner).

Ordinarily, a treating physician's opinion on the nature and severity of a patient's

impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

Here, the ALJ discounted the opinion of Dr. Haynes on the basis that it was not supported by his own examinations. She then quickly segued into the opinion of the non-examining agency physician. However, a non-examining physician/psychologist's opinion does not provide good cause for an ALJ to discount the findings of an examining physician. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount findings of treating physician).[7] In any event, the non-examining physician's assessment is *not* consistent with the ALJ's RFC. Dr. Craig indicated, *inter alia*, that Presley could stand and/or walk for a total of only *two* hours in an eight hour day. In contrast, the ALJ found that plaintiff retained the RFC for light work, which requires the ability to stand or walk, off and on, for a total of approximately *six* hours of an eight hour workday. *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, Social Security Ruling 83-10 (S.S.A 1983).

---

[7] The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician." *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990) (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

Furthermore, the Fifth Circuit has remarked that, "*absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added). In this case, there was no other evidence from a treating or examining physician that controverted the impressions of plaintiff's treating physicians. Thus, the ALJ was obliged to address each of the § 404.1527(d)(2) (now § 404.1527(c)) factors. This, she did not do.

In the end, it is apparent that the ALJ autonomously derived Presley's RFC, without the benefit of a supportive medical opinion. In *Ripley v. Chater*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court could not determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a medical source statement that supports the ALJ's RFC. Moreover, plaintiff's own testimony was not consistent with the ALJ's RFC. (Tr. 65-69, 75). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See*

*Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

## II.     Step Four and Remand

Because the foundation for the ALJ's step four determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, likewise is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

11

**Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.[8]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 16th day of December 2016.

                                                             _____
                                                             KAREN L. HAYES
                                                             UNITED STATES MAGISTRATE JUDGE

---

[8] The court need not consider plaintiff's additional arguments. These issues may be addressed upon remand.